542 So.2d 1365 (1989)
EMPLOYER'S CASUALTY INSURANCE COMPANY, WORKERS' COMPENSATION LIENHOLDER, Appellant,
v.
Michael MANFREDO, Appellee.
No. 88-1794.
District Court of Appeal of Florida, Third District.
May 9, 1989.
Pyszka, Kessler, Massey, Weldon, Catri, Holton & Douberley and Phillip D. Blackmon, Miami, for appellant.
Bruce S. Schwartz and Theodore R. Dempster, North Miami Beach, for appellee.
Before BARKDULL, JORGENSON and LEVY, JJ.
LEVY, Judge.
We have before us an appeal by a worker's compensation lienholder of the trial court's order on its motion for equitable distribution of its lien. We reverse and certify the matter to the Supreme Court.
As a consequence of an injury he received while on the job, appellee Michael Manfredo filed a complaint for damages against a third-party tortfeasor. Appellant *1366 Employer's Casualty Insurance third-party tortfeasor. Appellant Employer's Casualty Insurance Company (Insurer) thereafter filed a notice of lien for payment of compensation and medical benefits under § 440.39(3)(a), Fla. Stat. (1983). The case was ultimately settled for $900,000.00, and Insurer moved for equitable distribution of its lien on the settlement proceeds for past and future compensation and medical benefits and for apportionment of attorneys' fees and costs. At the hearing on Insurer's motion, the parties disagreed regarding the mathematical formula to be derived from the statutory language.
The challenged order on equitable distribution found: 1) that Manfredo had settled his underlying third-party tortfeasor claim for $900,000.00; (2) that the full value of Manfredo's claim was $1,500,000.00; (3) that the difference between the full value of the claim and the gross amount of the settlement was attributable solely to Manfredo's comparative negligence; and (4) that the parties had stipulated both that 45.5% of the settlement was consumed in legal fees and costs and, furthermore, that the lien then outstanding was in the amount of $44,465.05 for the benefits that had already been paid.
The court found that Insurer had a right to reimbursement. The court also found that, under the statute, this right to reimbursement was qualified by Insurer's obligation to bear its pro-rata share of the recovery costs and attorney fees and, furthermore, by the effect of Manfredo's comparative negligence which caused him to recover less than the full value of his damage claim. The court then quantified these two "qualifications"[1] as 45.5% and 40%, respectively, and then added them together to arrive at a figure of 85.5% (representing the total percentage reduction in Insurer's past & future benefits lien), and then subtracted the 85.5% from Insurer's otherwise unrestricted lien to yield a figure of 14.5%, representing both the percentage which Insurer could recover of the $44,465.05 in benefits already paid (to-wit: $6,447.43), and the percentage by which all future compensation and benefit payments were to be reduced.
Appellee Manfredo finds the trial court's approach to be mandated by the language of the statute and by this court's decision in Brandt v. Phillips Petroleum Co., 511 So.2d 1070 (Fla. 3d DCA 1987). Appellant Insurer, on the other hand, challenges the order on equitable distribution upon the authority of Nikula v. Michigan Mutual Insurance, 531 So.2d 330 (Fla. 1988), contending that the process utilized by the trial court results from an incorrect interpretation and application of § 440.39(3)(a) (1983). Under appellant's reading of Nikula, Insurer would be entitled to a lien on Manfredo's settlement proceeds based upon the ratio of Manfredo's net settlement ($490,500.00) to the judicially determined full value of Manfredo's third-party claim ($1,500,000.00), or 32.7%. We agree with appellant's reasoning.
The fault with the methodology urged by the appellee becomes more and more apparent as we scrutinize it more closely. First of all, the appellee's approach results, in essence, in mixing "apples and oranges". Appellee would have the court add the 45.5% (representing the litigation costs and fees) and the 40% (representing the degree of comparative negligence charged by the court to the appellee), resulting in a figure of 85.5%. This approach ignores the fact that those two percentage figures are percentages of two totally different amounts. The 45.5% figure relates to a calculation that begins with the $900,000.00 gross recovery. The 40% comparative negligence figure, however, was never used in connection with any calculation applied to the $900,000.00 figure. Rather, the 40% figure *1367 is one that would have been applied in connection with the $1,500,000.00 amount that represented the full value of the appellee's injury.
Furthermore, one would only have to test appellee's approach by applying it to a hypothetical situation involving a different set of numbers to see how inappropriate appellee's methodology really is. For example, let us assume that the appellee was 90% comparatively negligent. Applying that figure to the $1,500,000.00 amount representing the full value of appellee's injury, this calculation would result in a gross settlement figure (assuming that the case had settled using that number instead of the 40% comparative negligence figure actually involved in the instant case) of $150,000.00. If we use the same 45.5% figure to represent the percentage of appellee's gross settlement that must be subtracted to allow for litigation costs and attorney's fees, we would find that the appellee would actually net a recovery in the sum of $81,750.00. While that certainly would be a very small sum of money compared to the $1,500,000.00 full value of the injury, one could understand the rationale behind that small recovery in view of the fact that, in addition to having to pay appropriate litigation costs and attorney's fees, the appellee lost the opportunity to recover most of the value of the injury because of his own negligence (the 90% comparative negligence figure). The fly in the ointment of appellee's methodology becomes quite apparent when we attempt to apply appellee's approach to the numbers used in the above-described hypothetical. Specifically, appellee would have the court take the 45.5% figure (representing the litigation costs and attorney's fees) and add it to the 90% figure (representing the comparative negligence of the appellee). This calculation would yield a net percentage amount of 135.5%. Continuing with the formula urged upon the court by appellee, this 135.5% figure would then have to be subtracted from 100%, leaving a negative percentage of minus 35.5%. Thus, when we next turn to the benefits paid by Insurer to see what percentage of those benefits (both past and future) can be recovered by Insurer, we see that Insurer would be unable to recover any of the $44,465.05 already paid. Indeed, since the percentage that Insurer is entitled to recover by this formula is a negative amount, one would expect a proponent of this formula to suggest that Insurer owes the appellee more money, to-wit: a figure that would equal (minus) 35.5% of $44,465.05. This would result, therefore, in Insurer being penalized (in connection with the recovery that it is entitled to make) to a greater degree than the appellee himself is being penalized (with regard to his net recovery) solely because of the extremely high degree of comparative negligence charged to the appellee. Applying appellee's approach to the hypothetical, as the degree of negligence of the appellee increases, the percentage of recovery obtained by Insurer (from appellee) decreases. Accordingly, the more negligent appellee is, the less that Insurer can recover from appellee resulting, in essence, in appellee benefiting, to a degree, for having been more negligent. Such a result would be absurd. Appellee's approach neither passes the scrutiny of common sense nor is it supportable when viewed through the eyes of current case law.
We note that the trial judge did not have the benefit of the Supreme Court's Nikula opinion when he issued his order in the instant case. However, in reliance upon Nikula, we reverse the order on equitable distribution and remand for entry of an appropriate order granting Insurer a lien of 32.7% for both past and future benefits.
Because we feel that this case involves a question of great public importance, we certify the following question to the Florida Supreme Court:
HAS THE SUPREME COURT'S OPINION IN NIKULA V. MICHIGAN MUTUAL INSURANCE CO., 531 So.2d 330 (FLA. 1988) IMPLICITLY OVERRULED BRANDT V. PHILLIPS PETROLEUM CO., 511 So.2d 1070 (FLA. 3D DCA 1987) AND THE REASONING THEREIN?
*1368 Reversed and remanded. Question certified.
NOTES
[1] Under Brandt v. Phillips Petroleum Co., 511 So.2d 1070 (Fla. 3d DCA 1987), insurer's pro rata share of the $409,500.00 in recovery costs and fees is 45.5% of Manfredo's $900,000.00 gross recovery. The parties, as noted, had stipulated to this figure, and the court adopted it. The comparative negligence factor of 40% was determined by calculating the difference between the full value of the claim ($1,500,000.00) and the gross amount of the settlement ($900,000.00)  a difference of $600,000.00  and expressing this $600,000.00 difference as a percentage of the $1.5 million judicially determined full value of the claim.